**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT, | §§§§§§ | |
| | § | CIVIL NO.: 4:25-cv-1782 |
| Plaintiff, | §§ | |
| v. | § | |
| ALBERTO RODRIGUEZ-ISIDOR, | § | |
| Defendant. | §§§ | |

### EX PARTE APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

Plaintiff, U.S. Department of Homeland Security, Immigration and Customs Enforcement, ("ICE"), asks this Court to issue an Emergency Temporary Restraining Order allowing Plaintiff to: (1) involuntarily hydrate Defendant; (2) perform blood draws; (3) perform all necessary physical examinations; (4)  perform oral feedings through a nasogastric tube, if medically necessary and indicated; and (5) restrain Defendant, as necessary, in order to do so. Plaintiff's reasons are set forth below.

### FACTS

Defendant Alberto Rodriguez-Isidor is a native and citizen of Mexico.  He is currently detained by the Montgomery Processing Center (MPC), but was transferred to the care of Ben Taub Hospital in Houston, Texas on April 16, 2025 by the ICE Health Service Corps (IHSC). Ex. 1, Declaration of ICE Deportation Officer (DO) Phillip Wiseman, ¶¶ 4, 6. He has been detained at the facility since April 1, 2025. *Id.* at ¶ 4. Prior to that, he was detained at the Texas

Department of Criminal Justice (TDCJ), Huntsville, Texas from February 26, 2024, through April 1, 2025. *Id.*

On April 11, 2025, ICE Health Service Corps (IHSC) notified Enforcement and Removal Operations (ERO) Houston that they initiated hunger strike protocols for Rodriguez-Isidor. *Id.* at ¶ 5. On April 11, 2025, Mr. Rodriguez-Isidor missed his ninth (9) consecutive meal and was classified as a hunger striker pursuant to ICE Health Service Corps guidance. Ex. 2, Declaration of Laura Stella, M.D, ¶ 6. Mr. Rodriguez-Isidor states that he is on a hunger strike because he wants to go home. Ex. 1, Declaration of ICE Deportation Officer (DO) Phillip Wiseman, ¶ 5. He now refuses to speak to MPC personnel or explain why he is not eating. Ex. 2, Declaration of Laura Stella, M.D, ¶ 6. He is on day #4 of his hunger strike and has missed 21 meals, as of lunch, 4/8/2025. He consumes minimal amount of water, and he is starting to show signs and symptoms of dehydration. *Id.* Mr. Rodriguez-Isidor has been refusing to allow the medical staff to perform vital signs and basic physical examinations, as well as routine laboratory testing. *Id.*

In the professional judgment of his treating physician, Dr. Laura Stella, if Mr. Rodriguez-Isidor continues his hunger strike, with the aggravating factor of inappropriate oral hydration, he will reach the point where he will require immediate medical intervention to prevent further deterioration and serious medical complications. Ex. 2, ¶ ¶ 17-18. Mr. Rodriguez-Isidor's continued fasting will result in permanent damage to his internal organs and has the potential to become life threatening. *Id.* Mr. Rodriguez-Isidor's fasting and dehydration, if left untreated, will cause fatal arrhythmia and/or cardiac arrest. *Id.* at ¶ 15.

The ICE medical staff has explained to Mr. Rodriguez-Isidor the medical necessity to eat and drink to preserve his health and the medical risks of continuing his hunger strike. Ex. 2 at ¶ 9. Other staff members have repeatedly talked to Mr. Rodriguez-Isidor in attempts to convince him to eat solid foods, liquid, or bland diets, and/or drink nutritional supplements. Ex. 1 at ¶ 7. However, Mr. Rodriguez-Isidor has continued to refuse to eat solid food, drink liquids, or to allow the medical staff to perform vital signs and basic physical examinations, as well as routine laboratory testing.  Ex. 2 at ¶¶ 6, 12. As a result, the current situation is critical and requires a Court order to : (1) involuntarily hydrate Defendant; (2) perform blood draws; (3) perform all necessary physical examinations; (4)  perform oral feedings through a nasogastric tube, if medically necessary and indicated; and (5) restrain Defendant, as necessary, in order to do so.. *Id.*

## ARGUMENT

Pursuant to Fed. R. Civ. P. 65(b)(1), this Court may issue a temporary restraining order without notice only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974).

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  "A preliminary injunction is an extraordinary remedy never

awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiff must "by a clear showing" establish that (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Here, ICE meets the standard for obtaining emergency injunctive relief. An emergency TRO in this case, although mandatory on Defendant, is intended to preserve the status quo and prevent irreparable harm by preserving Defendant's life and health. To do otherwise would change the status quo, and could result in irreparable damage to Defendant's health, perhaps even death, and to the Unites States' efforts to maintain the good order of the institution, and to preserve life and health. Deliberate indifference to Defendant's condition is prohibited by federal statute and the United States Constitution. *Hui v. Casteneda*, 559 U.S. 799, 804 n.3 (2010) (immigration detainee; U.S. conceded liability under FTCA for medical malpractice). The Government cannot simply remain indifferent while Defendant starves and injures himself and potentially dies.

The interests of the Government in the preservation of life, and maintenance of institutional order, and the costs associated with a hunger strike, have been found to outweigh an immigration detainee's rights in maintaining a hunger strike, and have provided a basis for ordering involuntary medical monitoring, feeding, and hydration. *See DHS v. Tortolo-Garcia*, No. 4:24-CV-02268, ECF No. 5 (S.D. Tex. June 18, 2024) (granting temporary restraining order to allow for involuntary medical monitoring, involuntary feeding, and hydration) (Ellison, J.); *DHS v. Ali*, No. 4:24-CV-02242, ECF No. 5 (S.D. Tex. June 14, 2024) (same)

(Hanen, J.); *In re Bahadur*, 441 F. Supp. 3d 467, 486 (W.D. Tex. 2020) (finding the irreparable injury of injury and possible death caused by hunger strike necessitated involuntary hydration and nutrition); *United States Department of Homeland Security v. Ivanov*, No. 19-cv-1573-DMS-MDD, Docket No. 6 (S.D. Cal. Aug. 22, 2019) (granting temporary restraining order to allow physical evaluations, involuntary feeding and hydration, and restraint if necessary); *United States Department of Homeland Security v. Yaldiz*, No. 19-cv-1752-GPC-WVG, Docket No. 6 (S.D. Cal. Sept. 12, 2019) (granting temporary restraining order to allow involuntary hydration, medical examinations, and restraints if necessary); *United States v. Ater*, No. 2:13-CV-2469-PHX (D. Ariz. December 11, 2013), ECF No. 8 (granting United States' emergency motion to involuntary administer food, nutritional supplements, and hydration, and conduct medical tests to detainee on hunger strike); *In re Fattah*, 2008 WL 2704541 (M.D. Pa. 2008) (continuing prior order from previous month to provide involuntary nasogastric tube feeding of ICE detainee who was engaging in hunger strike); *In re Soliman*, 134 F.Supp.2d 1238, 1253-58 (N.D. Ala. 2001) (concluding legitimate penological objectives allowed ICE to force-feed detainee voluntarily starving himself); *United States v. Djokic*, No. 2:09-CV-11331-MOB (E.D. Mich. April 9, 2009), ECF No. 3 (granting United States' TRO request to involuntarily administer intravenous fluids necessary to prevent life-threatening dehydration); *United States v. Alqaddi*, No. 1:10-CV-642-JG (N.D. Ohio March 26, 2010), ECF No. 3 (granting United States' TRO request for Department of Homeland Security to involuntarily feed and hydrate detainee and use sedation to effectuate these procedures); *see also Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998) (upholding order that hunger striking civil contemnor be

5

force-fed; "the preservation of life, prevention of suicide, and enforcement of prison security, order, and discipline, outweigh the constitutional rights asserted by" the detainee).

Here, the Government's interest in preserving life and health outweigh whatever interest Defendant has in pursuing a hunger strike. The public interest also requires that the Government act to preserve life and health. The Government therefore has a strong likelihood of success on the merits and meets the standards for obtaining a temporary restraining order.

Furthermore, the declaration of Dr. Stella makes clear that the requested temporary restraining order is necessary to prevent immediate and irreparable damage. Defendant has been on a hunger strike for 13 days  as of the filing of this motion and has since been transferred to Ben Taub Hospital, Houston, Texas. Ex. 1, ¶ 6; Ex. 2, ¶¶ 6, 18. Dr. Stella's professional opinion is that given the duration of the hunger strike and Defendant's physical condition, involuntarily hydration, blood draws, and physical examinations, are now necessary. Ex. 2 at ¶ 18. Dr. Stella believes that oral feedings through a nasogastric tube, if medically necessary and indicated by the examinations and laboratory results may be needed. *Id.* at ¶ 21. In light of Defendant's medical condition, delaying this proceeding to serve the Defendant and allow him to respond would delay needed medical attention. Nevertheless, the Government, through ICE staff, will seek to serve Defendant with the Complaint and this ex parte application for emergency temporary restraining order as soon as possible.

For the foregoing reasons, the Government respectfully requests an immediate Order permitting it, through competent medical practitioners employed by or contracted with the federal government to: (1) involuntarily hydrate Defendant; (2) perform blood draws; (3) perform all necessary physical examinations; (4)  perform oral feedings through a nasogastric

tube, if medically necessary and indicated; and (5) restrain Defendant, as necessary, to accomplish these procedures, in order to prevent injury, organ failure, and/or death due to his self-imposed hunger strike. Involuntary hydration would be accomplished through intravenous means. The Government asks that it be allowed to continue the requested involuntary medical treatment until it is no longer medically necessary.

The Government further requests that this Court set an expedited preliminary injunction hearing at its earliest convenience, at which time the Government will proceed with a motion for preliminary injunction, after completing service. The government will also provide the Court with an update on Defendant's status. In the event Defendant begins to eat or to consume more fluids, and involuntary medical intervention is no longer medically necessary, the Government will file an immediate motion to vacate the TRO and voluntarily dismiss this action.

Dated: April 17, 2025

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

By: */s/ Christina Cullom*
Christina Cullom
Assistant United States Attorney
Attorney-in-charge
Southern District No. 3825236
Texas Bar No. 24122806
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9962
Fax: (713) 718-3303
E-mail: Christina.Cullom@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document has 1,744 words in Garamond 13-point font, excluding the caption, tables, signature block, this certificate, and certificate of service.

/s/ *Christina Cullom*
Christina Cullom
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on April 17, 2025, the foregoing was filed and provided to ICE representatives to serve on Defendant.

/s/ *Christina Cullom*
Christina Cullom
Assistant United States Attorney