GOVERNMENT
EXHIBIT

2

PENGAD 800-631-6989

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT, | § § § § § | |
| Plaintiff, | § | CIVIL NO. 4:25-cv-1782 |
| v. | § § | |
| ALBERTO RODRIGUEZ-ISIDOR, | § § | |
| Defendant. | § § § | |

## DECLARATION OF ANA LAURA STELLA, MD.

I, Ana Laura Stella, MD make the following statements under oath and subject to the penalty of perjury pursuant to the provision of 28 U.S.C. § 1746.

1.      I am a licensed, Board-Certified Family Medicine physician assigned to the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), ICE Health Service Corps (IHSC) as the Clinical Director at Montgomery Processing Center (MPC).  I have held this position since November of 2022 and as IHSC physician since 2020.

2.      ICE is committed to ensuring that every person detained in its custody receives timely access to necessary and appropriate medical, dental, and mental health care and treatment while in custody.  The health, safety, and welfare of those detained in its custody are among agency's highest priorities, and IHSC has protocols in place to ensure that any patient on a hunger strike within its detention facilities is promptly and appropriately addressed and treated.

3.      As the Clinical Director at Montgomery Processing Center, my duties include providing medical care for detainees at the facility.

4.      This declaration is made in support of the Complaint and Motion by the United States of America to perform involuntary vital measurements, laboratory monitoring, physical examinations, intravenous hydration and involuntary oral feedings for Mr Alberto Rodriguez-Isidor A220498471 who is detained at Montgomery Processing Center at Conroe, Texas. I am familiar with the case of Mr. Alberto Rodriguez-Isidor A220498471. I am the supervising physician for Mr. Alberto Rodriguez-Isidor, and I make this declaration based upon a review of the patient's records, my examination of the patient and discussions with the treating medical staff.

5.      Mr. Alberto Rodriguez-Isidor is a native and citizen of Mexico.  He entered the Montgomery Processing Center on April 1st, 2025.

6.      On April 11th, 2024, Mr. Alberto Rodriguez-Isidor missed his ninth consecutive meal and was classified as a hunger striker pursuant to IHSC guidance. Mr. Alberto Rodriguez-Isidor refuses to explain why he is not eating. He is on day #4 of his hunger strike and has missed 21 meals, as of lunch, 4/8/2025. He consumes minimal amount of water, and he is starting to show signs and symptoms of dehydration.

7.      The last weight that was obtained was done on April 1, 2025 and the weight was 141 pounds. His pre-hunger strike weight was 158 pounds. Mr. Alberto Rodriguez-Isidor has lost at least 17 pounds, which reflects a loss of 10.75% of baseline body weight since the onset of his hunger strike.

8.      Mr. Alberto Rodriguez-Isidor displays evidence of major depression, however he appears to be operating under his own free will. Mr Rodriguez-Isidor has been examined by our behavioral health providers and our psychiatrist.

9.      Mr. Alberto Rodriguez-Isidor has been counseled by medical staff with an interpreter on the effects of self-imposed dehydration and starvation on his body.  He has also been informed of the involuntary hydration and feeding procedures that will be pursued to prevent injury and/or death to himself should he continue not to eat.

10.      Mr. Alberto Rodriguez-Isidor refuses to cooperate with our medical team and

evaluation is limited due to him being non-compliant and non-cooperative with the staff.

11. He remains in custody at Montogomery Processing Center and under medical observation by medical staff in the Medical Housing Unit.

12. Mr. Alberto Rodriguez-Isidor has been refusing to allow the medical staff to perform vital signs and basic physical examinations, as well as routine laboratory testing.

13. Laboratory tests are needed to evaluate the metabolic state to include electrolytes, liver, and kidney function. This was explained to Mr. Alberto Rodriguez-Isidor, but he continues to refuse all type of medical evaluation.

14. The laboratory tests that need to be obtain during a hunger strike include:

a. Complete metabolic panel. This test reveals an increase in markers of kidney function in view of any renal injury. The panel tests BUN (blood urea nitrogen) creatinine level and proteins. It also reveals electrolyte disturbances that can lead to heart arrhythmias such as potassium, phosphate, magnesium and glucose levels.

b. Complete blood count. This test reveals the hemoglobin level.

c. Urinalysis, which reveals the presence of ketones, blood and crystals in the urine.

d. Thiamine levels to assess deficiency at day 14 of a hunger strike.

e. Electrocardiogram, if the patient shows elevated potassium, which can lead to arrhythmias.

f. Creatinine phosphokinase (CPK), which is an enzyme found inside muscle cells and is released into the blood when the muscle cells rupture. The increase in CPK can lead to rhabdomyolysis, a breakdown of muscle tissue that can fatally damage other vital organs.

g. Prealbumin, used as a marker for nutritional status evaluation. Prealbumin will decrease over time the longer a patient fails to consume adequate nutrition, and the prealbumin level correlates with patient morbidity and mortality risk. Normal prealbumin is 15-35 mg/dL. When prealbumin falls to 5-11mg/dL, significant morbidity risks exist, and aggressive nutritional support is necessary.

15. It is difficult to predict for how long the human body can survive without food;

if an individual does not have adequate fat stores, this time decreases significantly.  If an individual goes without water for approximately eight to ten days, he will suffer from dementia and delirium seizures and ultimately become unconscious.  Dehydration greatly accelerates a progressive starvation because the waste that the body produces is not excreted.  Death by terminal total fasting occurs by acute depletion of thiamine, causing fatal arrhythmia and/or cardiac arrest.

16.    On April 11, I personally examined Mr. Rodriguez-Isidor. He is noted to have thin body frame and has muscle wasting on his upper and lower extremities. He has dry lips and shrunken cheeks, and his oral mucosa appears dry. He has noticeable weakness, lethargy and difficulty concentrating. His urine output is decreased, and patient is spilling the bottled water and nutritional supplement in his room so staff is unable to measure his intake.

17.    Mr. Alberto Rodriguez-Isidor continues to be non-cooperative despite counseling. Medical literature reflects that metabolic imbalance, caused by fasting, is likely to result in permanent bodily damage and/or death once weight loss reaches 18% of the patient's initial weight.

18.    Based on Mr. Alberto Rodriguez-Isidor's current physical condition, and the fact that he has not had adequate nutrition for 8 days, nor had appropriate oral fluid intake, it is my informed medical opinion to a reasonable degree of medical certainty that involuntary intravenous hydration will be required if his laboratory, examination, and assessment show a severe state of malnourishment.

19.    When medical intervention is required due to patient showing laboratory results and physical examinations consistent with severe malnutrition, it will be necessary to feed Mr. Alberto Rodriguez-Isidor a nutritional supplement through a nasogastric tube and/or intravenous line to provide him the nutrition he needs.  His present dehydration status may also require intravenous fluid hydration to stabilize his blood pressure and ameliorate the signs and symptoms of postural hypotension.

20.    Also, it is necessary to perform laboratory tests and physical evaluation to monitor and assess his clinical condition.  If his laboratory tests reveal other conditions requiring medical attention, it may be necessary to administer such medications intravenously.

21.     I am requesting the issuance of a court order to perform involuntary hydration, blood draws, all necessary physical examinations and ultimately if medically necessary and indicated, oral feedings through a nasogastric tube if medically necessary to preserve and sustain Mr. Alberto Rodriguez-Isidor health, welfare, medical safety, and life.

22.     To prevent injury to Mr. Alberto Rodriguez-Isidor, medical staff and custody staff while administering involuntary treatment, should Mr. Alberto Rodriguez-Isidor refuse to cooperate, soft restraints may be used to immobilize him.  Should physically restraining become necessary, IHSC will coordinate with ICE Enforcement and Removal Operations (ERO) on how to best to implement the Supplemental Order of Authorization.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed April 17th, 2025**

ANA L STELLA

Digitally signed by ANA L STELLA
Date: 2025.04.17 08:28:07 -05'00'

**Ana Laura Stella, MD**

**Clinical Director**

**Montgomery Processing Center**